**Application of Walter KLOSSIKA and Alfred Blaha.**

**Patent Appeal No. 7968.**

United States Court of Customs and Patent Appeals.

May 2, 1968.

George H. Spencer, Harvey Kaye, Spencer & Kaye, Washington, D. C., for appellants.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,* Judges.

SMITH, Judge.

The determinative issue here is whether appellants' claimed invention would have been obvious in view of the prior art of record within the meaning of 35 U.S.C. § 103.

The issue is presented in this appeal from the decision of the Patent Office Board of Appeals,[1] adhered to on reconsideration, affirming the examiner's rejection of claims 8 through 12 of appellants' application[2] under 35 U.S.C. § 103 in view of the following prior art references:

| Maynard et al. (Maynard) | 2,947,925 | Aug. 2, 1960 |
| Downing et al. (Downing) | 2,959,705 | Nov. 8, 1960 |
| Philips (French) | 1,179,195 | Dec. 15, 1958 |

Appellants' specification explains that a problem in the manufacture of semiconductor current translating devices, such as diodes and transistors, is to maintain uniformity with respect to reverse current and current amplification characteristics. It had been determined that surface ionization caused by static charges adversely affects the performance of the semiconductors. Appellants' inven-

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. The board consisted of Messrs. Friedman and Kreek, Examiners-in-Chief and Burns, Acting Examiner-in-Chief. Mr. Burns wrote the opinion of the board.

2. Serial No. 245,640, filed December 17, 1962 entitled "Semiconductor Construction." The application is described as a "division" of copending application Serial No. 9,055, filed February 15, 1960, now abandoned.

tion is directed to a semiconductor construction which is intended to prevent the accumulation of surface charges on an enclosure containing the semiconductor.

Appellants' invention is apparent from claim 8 when read on the construction shown in Fig. 3:

## Fig.3

GLASS

CONDUCTIVE LACQUER

Claim 8, with reference numerals in brackets referred to the above Fig. 3, is as follows:

8. A semiconductor construction [1] comprising, in combination:

(a) a semiconductor device having a plurality of electrodes;

(b) an envelope [6] made of insulating material and surrounding said semiconductor device and its electrodes;

(c) electrically conductive means [5] arranged over the outer surface of said envelope;

(d) means [4] electrically connecting one of said electrodes with said electrically conductive means; and

(e) current lead-in means [7] separate from said envelope [6] and said electrically conductive means [5] for electrically connecting said electrodes to external circuitry said current lead-in means forming current conductive paths for the currents to and from said electrodes which paths are exclusive of said electrically conductive means [5] on said envelope.

Claims 9 through 12 further limit claim 8 to a "conductive layer" as the electrically conductive means (claim 9), designate "said one electrode" as the base electrode (claim 10), specify that the envelope is of glass (claim 11), and add that the "electrically conductive means" is a conductive layer applied to the outer surface of a glass envelope (claim 12).

The examiner rejected appellants' claims "as being unpatentable over the French patent when considered with Maynard et al., pursuant to 35 USC 103."

French relates to a semiconductor electrode arrangement in which conductors emerge from either side of the envelope.

Figs. 1 and 2 of the French patent are reproduced below:

FIG.1      FIG.2

The reference explains that a diode, as shown in Fig. 1, with a conductor 2 and a conductor 3, of the type represented by the phantom line, is known as a single-ended diode. To form a double-ended device, i. e., one having a conductor at each end of the envelope, a metal tube 7, closed at the bottom, is slipped on the diode. The open end is joined to conductor 3. A connection lead 8 is fixed to the other end of the tube. Thus, a device is provided which may possess certain advantageous connecting characteristics.

The examiner applied the French patent to the claim 8 as follows:

* * * The French patent shows, in Fig. 2, a semiconductor 1 having a plurality of electrodes sealed within a glass envelope. A metallic tube 9 is disposed over the envelope and meets the limitation recited in claim 8, subparagraph (c). Lead-in conductor 13 is bent over and contacts the metallic tube, as recited in claim 8, subparagraph (d). The French patent fails to disclose that the lead-in conductors 11, 12 and 13 form current conductive paths for the currents to and from said electrodes which paths are exclusive of said electrically conductive means on the envelope, as recited in the last four lines of subparagraph (e) of claim 8.

The examiner considered that last-mentioned feature to be an "old expedient in the semiconductor art as evidenced by the Maynard et al. patent." Figs. 5 and 6 of Maynard are pertinent:

*Fig. 5.*

*Fig. 6.*

The examiner applied the disclosure of these figures to appellants' claimed invention, stating:

* * * Note that in Figs. 5 and 6, the patentee shows a transistor mounted within a metal housing. Lead-in conductors 14, 16 and 17 are embedded in and extend through the insulating base portion 12 of the housing. As best seen in Fig. 5, a metal strip 19 supports the base region of the transistor, which in turn is connected to L-shaped tabs and lead-in conductors 16 and 18. The emitter and collector regions are connected to lead-in conductors 14 and 17 by means of wires 27 and 23, respectively. The base region of the transistor is electrically connected to the cover 31 by means of metal coating 13, tabs 28 and 29 and metal strip 19. Thus, the lead-in conductors 14, 16 and 17 provide current conductive paths for the currents to and from the electrodes which paths are exclusive of the electrically conductive means (cover 31 of the metallic envelope). * * *

The examiner concluded:

* * * To modify the French patent by allowing lead-in conductor 13 to extend out from the glass base, like lead-in conductors 11 and 12 and have some means for electrically connecting the lead-in conductor 13 to the metal tube would be an obvious modification in view of the teaching of the Maynard et al. patent. * * *

The board affirmed, adopting the examiner's application of the references set forth in his Answer.

The appellants here argue that, in French, the metallic tube surrounding the semiconductor device must form a part of the current conducting path to one of the electrodes of the device. From this, they conclude that there is no basis "to modify the primary reference * * * in accordance with Maynard et al" since it would be "directly contrary to the teachings of the primary reference." In support of that conclusion, appellants further argue that the metal envelope of French cannot function to prevent the occurrence of static charges in the semiconductor element.

On this point, the examiner had urged that "the metallic tubular member [of

French] will inherently serve the same function as appellants' lacquer coating." We agree with the solicitor that a fair interpretation of this comment is that the examiner believed that the metal tubes will drain off any surface ionization or static charges that may form on the glass envelopes of the French device in the same manner as appellants' invention. Thus, on the record, we are unpersuaded by appellants' arguments since, in our view, they have failed to controvert the position of the examiner.

Appellants' second argument is directed to the efficacy of Maynard. Appellants first submit that there is no basis in the reference for concluding that cover member 31 is of a conductive material. We think it a sufficient response to such argument to observe that Maynard discloses a body portion 12 held within the *conductive* metal cover 13 which is made of a suitable alloy such as "Kovar" and carries a thin gold layer on its upper surface 13a. The cover unit 31 is described as suitably connected as by *welding* to the mounting base 11 along the shoulder 32. Moreover, the cross-hatching of the member 31, shown in Fig. 6, shows that it would be made of metal if the drawings are in accordance with Rule 84(g) of the Rules of Practice.[3] These two factors seem to us to indicate that one of ordinary skill in the art would consider it an obvious expedient to make the cover 31 from metal. Thus, in the absence of evidence to overcome this prima facie showing by the examiner, the metal cover 31 of the Maynard reference would satisfy that limitation in appellants' claims.

The second phase of appellants' argument attacking the sufficiency of the Maynard teachings is directed at whether the L-shaped heat-dissipating members 28 and 29 satisfy the claim requirement that there be an "electrical connection between one semiconductor element electrode and the conductive layer, i. e., cover member 31. It is a sufficient response to observe that strip members 28 and 29 are disclosed as "made of nickel" and are thus capable of conducting electrical current, even though its degree of conductivity may be less than copper.

The Downing patent was cited by the examiner for the purpose of showing a protective shield in the form of a conductive lacquer material applied to an outer surface of a glass envelope of an electron discharge tube. His position was that Downing demonstrated the equivalency of a metallic coating sprayed upon a glass envelope with the tubular member of French. The board did not further elaborate.

Appellants here argue that the coating layers of Downing are not electrically connected to any of the lead-in means of that device. However, we think that the Downing patent was a proper reference here to the extent of the limited purpose for which it was used.

■■ Thus, we agree with the statement in the solicitor's brief that the analogous character of the semiconductors in the reference patents and their electrical characteristics warrant a combination of their teachings in support of the examiner's rejection of the claims under 35 U.S.C. § 103.

Accordingly, the decision of the board is affirmed.

Affirmed.

---

3. 37 C.F.R. § 1.84(g) (1960), pertinent here, provided:
    Graphical drawing symbols for conventional elements may be used when appropriate, subject to approval by the Office. * * *

The approved symbol for sectioned metal shown on page 134 of the Rules of Practice is the same as the cross-hatching for member 31 in Figures 5 and 6 of the Maynard et al. patent.